# United States District Court
**EASTERN DISTRICT OF TEXAS**
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, | § | |
| BY AND THROUGH JASON AND | § | |
| DEBORAH LANCE, INDIVIDUALLY, | § | |
| AND UPON BEHALF OF HIS HEIRS | § | |
| | § | |
| v. | § | Case No. 4:11-CV-00032 |
| | § | Judge Clark/Judge Mazzant |
| LEWISVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Motion to Exclude Defendant's Experts (Dkt. #68), Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74), Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Michael Freeman (Dkt. #77), Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Scott Poland (Dkt. #78). Having considered the relevant pleadings, the Court finds Plaintiffs' Motion to Exclude Defendant's Experts (Dkt. #68) is denied, Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74) is denied, Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Michael Freeman (Dkt. #77) is denied, and Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Scott Poland (Dkt. #78) is granted in part and denied in part.

## BACKGROUND FACTS

Montana Lance, a student at Defendant Lewisville Independent School District, was a "student with a disability" (Dkt. #16, ¶ 8). Plaintiffs allege that Montana Lance was the victim of bullying and harassment at Stewarts Creek Elementary School. *Id.* at ¶ 30-32. On January 21, 2010, Montana Lance committed suicide in a bathroom located in the nurse's office. *Id.* at ¶ 64. Plaintiffs

assert claims under Section 504 of the Rehabilitation Act and a Fourteenth Amendment constitutional claim under 42 U.S.C. § 1983.

## PROCEDURAL HISTORY

On April 3, 2012, Plaintiffs filed their Motion to Exclude Defendant's Experts (Dkt. #68). Defendant filed a response on April 19, 2012 (Dkt. #82).

On April 9, 2012, Defendant filed its Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74). Plaintiffs filed their response on April 26, 2012 (Dkt. #88). On April 30, 2012, Defendant filed its reply (Dkt. #101).

On April 10, 2012, Defendant filed its Motion to Strike the Testimony of Michael Freeman (Dkt. #77). Plaintiffs filed their response on April 26, 2012 (Dkt. #93). Defendant filed its reply on May 1, 2012 (Dkt. #105).

On April 10, 2012, Defendant filed its Motion to Strike the Testimony of Scott Poland (Dkt. #78). Plaintiffs filed their response on April 26, 2012 (Dkt. #92). Defendant filed its reply on April 30, 2012 (Dkt. #103).

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the

evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

3

**ANALYSIS**

*A. Plaintiffs' Motion to Strike Defendant's Experts (Dkt. #68)*

Plaintiffs move to exclude the testimony of four individuals identified as "non-retained" experts who may provide expert testimony for Defendant (Dkt. #68 at 2). Those individuals are Paula Walker, Ph.D., Alex Alexander, Ph.D., Gale Ladehoff, M.S., M. Ed., and Kevin Rogers, Ed. D. *Id*. Plaintiffs assert that these expert designations were not accompanied by the reports required by Federal Rule of Civil Procedure 26(a)(2)(B), nor were the reports provided by Defendant. *Id*. at 4. Further, Plaintiffs contend that the disclosures with regard to these designated experts are inadequate. Finally, Plaintiffs argue that Defendant has not disclosed the qualifications of these witnesses, and given no information to allow the Court to determine whether their testimony is reliable under Federal Rule of Evidence 702 and *Daubert*.

Defendant contends that the four individuals are qualified, and their testimony will be relevant to assist the trier of fact in determining a fact in issue (Dkt. #82 at 10). Defendant further argues that the experts provided adequate initial information, and applied a reliable methodology. *Id*. at 11-13.

The Court agrees that Defendant's experts are qualified to testify as expert witnesses. Dr. Paula Walker is the Executive Director of Special Education for Lewisville Independent School District ("LISD"), and has significant experience in special education (Dkt. #82, Ex. 1). Dr. Walker has experience in overseeing programs and services for special education students, as well as in the implementation of 504 procedures and services. *Id*. An expert must be qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Dr. Walker has the knowledge, experience, training, and education to allow her to qualify to testify as an expert

witness.

Dr. Alexander is the Special Education Director for LISD, and is a licensed psychologist, special education teacher, school psychologist, and specialist in school psychology (Dkt. #82, Ex. 2). Dr. Alexander qualifies to testify as an expert witness through his knowledge, experience, training, and education regarding the psychological and special education requirements of students.

Ms. Ladehoff is the Director of Guidance and Counseling Services in LISD, and supervises the provision of counseling services to all campuses within the school district (Dkt. #82, Ex. 3). Ms. Ladehoff has a Master's Degree in Education Administration and Counseling from the University of North Texas. *Id.* Ms. Ladehoff qualifies to testify as an expert witness through her knowledge, experience, training, and education regarding the recognition, assessment, and response to suicide outcries in school-age children, and the provision of counseling services to students.

Dr. Rogers is the Assistant Superintendent of Secondary Education in LISD (Dkt. #82, Ex. 4). Dr. Rogers also has experience as a principal and assistant principal. *Id*. Dr. Rogers qualifies to testify as an expert witness through his knowledge, experience, training, and education regarding bullying in schools, and LISD's policies and procedures regarding bullying.

In addition, the Court finds that the testimony of these expert witnesses is relevant to assist the trier of fact to determine a fact in issue. Dr. Walker will testify regarding the provision of special education services to students, and specifically how those services were provided to Montana Lance. Dr. Alexander will testify regarding psychological and special education assessments of school children, responses to suicidal outcries, the provision of psychological services in a school setting, and LISD's provision of these services. Ms. Ladehoff will testify regarding the recognition, assessment, and response to suicidal outcries in school-age children, and the provision of counseling

services to students. Finally, Dr. Rogers will testify regarding the policies and procedures surrounding bullying in schools and the application of the policies in the circumstances involved in this case. Each of these topics is relevant to the claims asserted by Plaintiffs.

Plaintiffs assert that Defendant's disclosures were inadequate to provide sufficient information about each of its expert witnesses. However, the Court finds that Defendant's disclosures meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(C), which requires Defendant to "state (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Defendant clearly submitted this minimum requirement to Plaintiffs.

Finally, Plaintiffs assert that there is an insufficient basis for the experts' testimony. In this case, the testimony is based mainly on the personal observations, professional experience, education, and training of the expert witnesses. In addition, the witnesses reviewed the relevant school records, documents produced in this litigation, and the testimony of other witnesses (Dkt. #82 at 13). A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 U.S. Dist. LEXIS 36776, *32-33 (W.D. Tex. 2008); *see also Pipitone*, 288 F.3d at 247(citing *Kumho*, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")). Further, Plaintiffs' concerns regarding the testimony of these expert witnesses may be addressed in cross-examination. "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Allison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 n.1 (E.D. Tex. May 21, 2003)

(citing *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*.

Therefore, the Court finds that Plaintiffs' Motion to Exclude Defendant's Experts is denied.

*B. Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74)*

Defendant argues that the testimony of Plaintiffs' expert witness Dr. Vincent DiMaio ("Dr. DiMaio") regarding the mechanism of death is irrelevant because Defendant does not contest the issue of the manner in which Montana Lance died (Dkt. #74 at 6). Further, Defendant contends that Dr. DiMaio's testimony regarding the level and duration of pain Montana Lance may have experienced is unreliable because he lacks sufficient facts and data to make reliable conclusions about any pain experienced by Montana Lance, his testimony is not based on reliable methods, and his testimony is not reliably applied to the facts of the case. *Id*. at 7-9. Defendant also asserts that Dr. DiMaio's testimony regarding the possibility of resuscitating Montana Lance is unreliable because it is not supported by evidence. *Id.* at 10.

Plaintiffs argue that Dr. DiMaio's testimony on the cause of death is relevant to provide the jury with the context for assessing damages based on pain and suffering. The Court agrees. The cause of death in this case is "cerebral hypoxia," which is not a term that will be understood by most lay persons. Dr. DiMaio's testimony will be relevant to assist the trier of fact in determining the meaning of this medical term and evaluating damages in this case.

Defendant also contests the reliability of Dr. DiMaio's opinion on any pain experienced by Montana Lance at the time of his death. To be reliable, and therefore admissible under Rule 702 of

7

the Federal Rules of Evidence, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et. alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

Defendant contends that Dr. DiMaio's opinions on the level of pain experienced by Montana Lance are not based on sufficient facts or data because, in supporting these opinions, Dr. DiMaio relies on observational case studies of four adults who filmed their own hangings. Defendant argues that because there is no research specific to children, this testimony is an "unsupported conjecture" (Dkt. #74 at 7). "Subpart (1) of Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying 'facts or data.'" FED. R. EVID. 702 advisory committee's notes. In formulating his opinions on the level and duration of pain that may have been suffered by Montana Lance, Dr. DiMaio relied upon four published, peer-reviewed studies on hanging deaths in adults, his personal observations of these deaths, his own observational experience and research conducted on cerebral hypoxia, and physical evidence of the death of Montana Lance contained in the medical examiner's autopsy report (Dkt. #88 at 7; Ex. 3). In addition, Dr. DiMaio reviewed Plaintiffs' Second Amended Complaint[1], the written statement of Terri Lowry, deposition on written questions of the Tarrant County Medical Examiner's Office,

---

[1] The Court did not permit Plaintiffs to amend their complaint, and the live pleading in this case is Plaintiffs' First Amended Complaint (Dkt. #16).

deposition on written questions of The Colony Police Department, deposition on written questions of the Baylor Medical Center, deposition on written questions of The Colony Fire Department, deposition of Terri Lowry, and deposition of Amy Teddy (Dkt. #74, Ex. 2 at 1). From a quantitative perspective, Dr. DiMaio's testimony is based on sufficient facts and data.

The Court next turns to the issue of whether Dr. DiMaio's testimony is the product of reliable principles and methods. Defendant argues that the Court should apply the *Daubert* factors to determine 1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert,* 509 U.S. at 593-94; *Pipitone*, 288 F.3d at 244. However, as acknowledged by Dr. DiMaio, it appears to the Court to be highly unethical to conduct controlled, clinical experiments related to the amount of pain experienced by victims of hanging, particularly when it relates to children. Therefore, it is not surprising that the research related to this subject is confined to observations and anecdotal reports by victims of partial hanging. Dr. DiMaio's opinions are based on his review of the materials in this case, research previously conducted in this subject area, and his extensive experience in forensic medicine and pathology. In addition, Dr. DiMaio openly explains the differences between adults and children in relation to experiencing cerebral hypoxia. Finally, it appears that the peer-reviewed, published studies and textbooks relied on by Dr. DiMaio are materials generally accepted in the scientific community. Defendant may properly cross-examine Dr. DiMaio on his opinions, the materials he relied upon in forming his opinions, and the reliability of his testimony at trial; however, this is no reason to exclude the testimony of Dr. DiMaio. *See Allison*, 2003 WL 25685229, at *1 n.1.

9

Finally, the Court must determine whether Dr. DiMaio's testimony on the level and duration of pain experienced by Montana Lance was reliably applied to the facts of this case. The Court finds that it was appropriately applied to the facts of this case. Dr. DiMaio is aware that Montana Lance was nine (9) years old at the time of his death. Dr. DiMaio relied on studies conducted by adults in relation to death by cerebral hypoxia. However, Dr. DiMaio accounts for several differences between children and adults, and discusses these differences in his report and deposition. For example, Dr. DiMaio accounts for the differences in weight between adults and children. Further, he discusses the musculature of a child in relation to that of an adult, and how that might affect his opinions. However, despite these differences, Dr. DiMaio opines that the same or similar physiological processes that were observed in the peer-reviewed, published studies would have occurred during Montana's death. Therefore, the Court finds that the opinions of Dr. DiMaio on the level and duration of pain experienced by Montana Lance are admissible.

Defendant also contends that the testimony of Dr. DiMaio regarding the possibility of resuscitating Montana Lance is unreliable because it is not supported by sufficient facts or data. Again, this is a qualitative analysis, and the Court finds that Dr. DiMaio relied on sufficient facts or data in reaching this conclusion.

Finally, Defendant argues that Dr. DiMaio has no opinion about when Defendant employees should have entered the bathroom in order to successfully resuscitate Montana Lance, and therefore, his opinion that Montana Lance could have been successfully resuscitated is unreliable. However, Dr. DiMaio opines that, "If access to the bathroom had occurred sooner, this child could have been successfully resuscitated" (Dkt. #88, Ex. 1 at 3). Dr. DiMaio further states:

> Lewisville ISD's challenge to my opinion that Montana Lance could have been

> resuscitated if reached earlier amounts to a challenge to a well understood physiological process that forms the very foundation of the most commonly taught and administered emergency procedure, CPR. CPR works because we understand that victims of cerebral hypoxia, whether due to strangulation, hanging or cardiac arrest, can in fact be resuscitated if oxygen and/or blood flow to the brain is restored in a timely manner.

(Dkt. #88, Ex. 3 at 2). Dr. DiMaio's opinion is based on his extensive experience as a medical professional, as well as review of the documents listed above. Therefore, the Court finds that the testimony of Dr. DiMaio is admissible, and Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74) is denied.

*C. Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Michael Freeman (Dkt. #77)*

Defendant argues that the testimony of Plaintiffs' expert Michael Freeman ("Dr. Freeman") should be excluded because it is inadmissible. Defendant asserts that Dr. Freeman's testimony is unable to establish a causal connection between suicide and bullying, and therefore, lacks scientific support (Dkt. #77 at 1). The Court did not rely on Dr. Freeman's opinions in making its recommendations on the motions for summary judgment in this case. In addition, since the Court recommends dismissal of Plaintiffs' claims, the Court finds Defendant's Motion to Strike the Testimony of Michael Freeman is denied as moot.

*D. Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Scott Poland (Dkt. #78)*

Defendant argues that the testimony of Plaintiffs' expert Scott Poland ("Dr. Poland") should be excluded because it is unreliable, fails to address matters that are a proper subject for expert testimony, states legal conclusions, and exceeds his area of expertise (Dkt. #78). Additionally, Defendant asserts that Dr. Poland should be prohibited from offering an opinion on damages, since he does not provide any testimony in his report regarding damages. *Id*.

First, Defendant asserts that Dr. Poland's testimony regarding bullying and suicide should be excluded because it is not reliable. *Id*. at 6. Defendant contends that Dr. Poland's opinion fails to rely on sufficient facts or data, and the only study he relies on is Dr. Freeman's inadmissible report. *Id*. However, there is no indication that Dr. Poland relied solely on Dr. Freeman's report in concluding that there is a correlation between bullying and suicide. Dr. Poland lists Dr. Freeman's report as one of the documents considered in formulating his opinions; however, that report is by no means the only document Dr. Poland considered (Dkt. #78, Ex. 2 at 3). Whether an expert relied on sufficient facts or data in support of his opinion is a quantitative analysis. FED. R. CIV. P. 702 advisory committee notes. Given the fact that Dr. Poland considered extensive records in this case, including medical records, depositions, and school records of Montana Lance, the Court finds that his opinions are based on sufficient facts and data. Further, in reaching his conclusion that there is a correlation between bullying and suicide, Dr. Poland relies on his own publications and research on suicide and bullying, as well as his extensive experience in these fields (Dkt. #78, Ex. 3 at 7). Defendant makes some attempt to argue that this evidence was not provided to them; however, Dr. Poland's publications are clearly listed in his CV, which is attached as an exhibit to Defendant's motion. Therefore, the Court finds that Dr. Poland's opinion that there is a correlation between bullying and suicide is admissible.

Defendant next contends that Dr. Poland's testimony regarding school safety is not a proper subject for expert testimony (Dkt. #78 at 8). Defendant states that this is merely a "common sense" matter that does not require expert testimony. Specifically, Defendant takes issue with Dr. Poland's opinion that the nurse should have had a key to the bathroom located in her office. Federal Rule of Evidence 702 only requires that the expert's opinion help the trier of fact to understand the evidence

12

or determine a fact in issue. *Pipitone*, 288 F.3d at 245. Defendant argues that it was not necessary for the nurse to have a key to the bathroom located in the nurse's station. Therefore, this is a contested issue of fact, and the testimony of Dr. Poland may assist the trier of fact in determining whether or not it was necessary to have a key to the bathroom in order to protect the safety of the students. Further, based on his experience as a school administrator, Dr. Poland's testimony on school safety provides a broad prospective on the minimum acceptable standards when it comes to school safety. The Court finds that Dr. Poland's testimony on school safety is admissible.

Defendant asserts that Dr. Poland's opinion states several inadmissible legal conclusions. Specifically, Defendant argues that the Court should exclude Dr. Poland's testimony that LISD did not properly implement the policies and reflected deliberate indifference. Further, Defendant contends that the Court should exclude Dr. Poland's opinions that "LISD, in dealing with Montana as a disabled student, acted in bad faith and/or exercised gross misjudgment, grossly departing from accepted standards among educational professionals," and that "the District's actions... pertaining to customs and practices of the District as they were implemented with regard to Montana, demonstrate bad faith and/or gross misjudgment in providing services to Montana Lance as a disabled student."

Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 118486, at *14 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."

13

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673. In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted).

Plaintiffs argue that Federal Rule of Evidence 704 allows testimony that embraces an ultimate issue for the trier of fact as long as the testimony is otherwise admissible. The "touchstone of admissibility of testimony that goes to the ultimate issue, is then, helpfulness to the jury." *U.S. v. Perkins*, 470 F.3d 150, 157-58 (4th Cir. 2006).

Dr. Poland should not be permitted to offer testimony on what law governs a dispute, or what the applicable law means. However, portions of his testimony may be helpful to the jury in determining, as the jury must do, whether Defendant acted with deliberate indifference or with bad faith or gross misjudgment. Dr. Poland outlines his review of Defendant's policies and procedures, the relevant portions of these policies, and how Defendant's policies and procedures were implemented in a practical sense (Dkt. #78, Ex. 2 at 7-9). The Court finds that Dr. Poland's use of the terms "deliberate indifference," "bad faith," and "gross misjudgment" is unnecessary and improperly invades the provinces of the jury. Therefore, the Court finds that Dr. Poland's testimony should be limited to exclude the use of those terms and his ultimate conclusions as to the applicable legal standards. Dr. Poland's remaining testimony, however, is helpful to the jury in determining ultimate issues of fact.

Defendant argues that Dr. Poland is not qualified to testify as an expert on special education services because he has no specialized knowledge, skill, experience, training or education (Dkt. #78

at 13). However, this does not accurately reflect Dr. Poland's qualifications. Dr. Poland has experience as a school psychology program administrator, director of the department of psychological services, a school psychologist, a mental health administrator, and counselor (Dkt. #78, Ex. 3). He has a doctorate degree in school psychology. *Id*. His extensive experience in school counseling and as an administrator clearly indicates that he is qualified to give expert testimony on issues of special education services in schools.

Finally, Defendant asserts that Dr. Poland should not be permitted to testify regarding damages, since he provided no information in his report on damages. The Court agrees, and Dr. Poland will not be permitted to testify regarding damages. Therefore, the Court finds that Defendant's Motion to Exclude Testimony of Scott Poland (Dkt. #78) is granted in part and denied in part.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Motion to Exclude Defendant's Experts (Dkt. #68) is DENIED.

The Court further finds that Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio (Dkt. #74) is DENIED.

The Court further finds that Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Michael Freeman (Dkt. #77) is DENIED as moot.

The Court further finds that Defendant's *Daubert* Motion to Strike the Testimony of Plaintiffs' Expert Scott Poland (Dkt. #78) is GRANTED in part and DENIED in part.

**It is SO ORDERED.**
**SIGNED this 11th day of May, 2012.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE